First case this morning has a rather famous name, Therasense v. Becton, Dickinson. Mr. Batke? Good morning. May it please the Court? Your Honor, back in 2008, Judge Allison determined that this case was exceptional, and he based that exceptional case finding on the fact that Abbott knew, when it brought the case, that the patent had been procured by inequitable conduct. And then he awarded fees for the case through trial. But then, arbitrarily, he denied fees for post-trial proceedings. Why do you say it's arbitrary? It's arbitrary, Your Honor, because... He considered it pretty carefully. It's not like he cast it aside, right? Well, what Judge Alsop considered was the issue of litigation misconduct, which is, I think, a separate ground. What Judge Alsop did not consider was the fact that what is that the inequitable conduct and the original decision to form the basis of the exceptional case infected every stage of the proceedings. And I think it's grossly unfair under Section 285, which is what Section 285 is designed to address, to say, well, we're going to cut your fees off at the trial. But then after you have an adjudication of inequitable conduct, say, no, we're not going to give you those fees. It infected every phase of this case, including the remand. And so what they managed to do, Abbott, was to erode the fee award by well over a third by continuing this case, which was demonstrated at every phase, to, you know,  And in fact, Judge Alsop noted in his remand decision that this court had basically, in his view, eliminated the doctrine, but yet he still found under these facts, which were so egregious, inequitable conduct. Well, he may need to consider the case as a whole for the exceptional case finding. Why can't, when he's setting the quantum, why can't he divide the case into phases, to use the words that the Supreme Court used once? Well, first of all, I think the Gene case, the Supreme Court in the Gene case would say that there's only one exceptional case finding. You only need one exceptional case finding. Once you find a case exceptional. Okay, we've done that. Then, without abusing his discretion, for quantum, divide the case into phases. Well, you get this much, that was fine, but he never gave a rationale. Well, that's not what he did, right? That's not what he did. I mean, I'm a little surprised that you didn't make more out of Gene in your brief, because the Supreme Court has said all these fee-shifting statutes should be construed the same way, and Gene says there's only one determination, and you get potentially fees for the whole case. But Chief Judge Rader is correct, is he not, that under Gene as well, Gene makes very clear that you can take into account the different phases of cases and reduce the fee award. Well, but – Or part of it. I'm sorry. Right? No, I don't agree with that, Your Honor. And if you take a look at the PPG case, the PPG case said once you have – If he's got the right reading of Gene, is there anything arbitrary about what Judge Alsop did? Yes, there is. There is something arbitrary about it. If you look at his decision, he did not address the basis of his exceptional case finding. He talked about litigation misconduct, but he didn't give a rationale for why the original basis, which was bringing the suit in the first place, didn't infect every stage of the proceeding. And if you look at the PPG case, this court's case, I think you would have to, in following that, you would have to award fees for every phase of the case because that issue infected it, and Judge Alsop didn't address that issue. The whole assessment is discretionary. Even if inequitable conduct was sustained for the appellate version, there's no entitlement to fees because of that. So how much deference? You say no, there's no deference, no discretion? No, I think there's discretion in the awarding of fees. That's the legal standard. But I think where Judge Alsop made a mistake is that he didn't appreciate the fact that under PPG, for example, and under Mathis, that the exceptional case finding followed along the entire course of the case right through to today. It still doesn't answer the question as to exceptional is not black or white. There are all sorts of degrees here. This is the reason for the discretionary assessment. So don't you have to show not only – we know that Judge Alsop is entitled to exercise discretion here. Do you need to show that this is intolerable, that there was no way discretion could have been exercised in this direction? Well, he had the discretion to award the fees, but he didn't give a rationale for why he didn't follow his exceptional case finding. Is that the problem? If he had given a reason, as he said, I think you've gotten enough. The decision was split. The first decision was reversed. It's gone up and down. Nothing was so clear. On appeal, some judges thought there was no inequitable conduct. Therefore, it's a matter of discretion. I think – well, I don't know whether Judge Alsop followed the appeal proceedings or not. I don't know whether Judge Alsop – But he didn't exercise discretion. I mean, that's your point. I mean, he said the appeal thing is separate from the trial, and it's to be treated separately. That's a rationale that under Gene is not correct. That's right. So he has the discretion to reduce the fees, but he didn't purport to be exercising his discretion. He purported to be drawing a bright-line rule and saying appeals are different. That's correct. That's exactly correct. And so he committed a legal error when he did that. But is it harmless for the very reason that Judge Newman pointed out, that he has full discretion to consider each phase of the case separately in the quantum stage, although he may have erred in reading the exceptional finding as being divided into phases? When it comes to granting the quantum, doesn't he have that discretion? Well, in granting the quantum, he has the discretion, but it's not fair. Okay, Your Honor. What's unfair about it? What's unfair about it is that this case went on for eight years. They pushed this case for eight years. They managed to erode the fee award by well over a third. That's what's not fair about it. Section 285 is designed to prevent the gross injustice involved here. They didn't win anywhere. I know that Abbott talks about the fact that they prevailed on the en banc. I don't see it that way. They didn't get the reversal that they were looking for. They got a vacating of it based on the new legal standard, but then we went back under a higher standard and we won again. Okay, they pushed this case for eight years. There's nothing fair about arbitrarily, in my view, cutting off the fees after the trial, especially after now you have an adjudication and an affirmance of the inequitable conduct rule. And now, again, we went back down on remand one again. They appealed and then they dropped their appeal. I mean our clients clearly prevailed at this case at every turn. There was nothing in the en banc decision, which is what they rely heavily on. Could you talk to us a moment about Judge Alsup's findings, that there were some problematic and troublesome aspects of your fee claim, including some submissions, four altogether, where attorneys billed over 24 hours in a day. Well, I would suggest respectfully, Your Honor, that that's actually, I'm happy to address that, not relevant to the actual question, but what happened there is that we were sued originally on four patents. We won on all four. Three of them were invalidated. And so what we had to do was go back through our billing records, and it was just really an accounting thing where we had to crunch numbers and go back and divide it out. It was a very complex and expensive project, which actually we didn't see compensation for. So there were mistakes. Ultimately, the special master in Judge Alsup was just fine with what we did, and we were awarded 90% of what we asked for up front. But it was just an accounting thing. And I was actually surprised that Abbott made a big deal of that in their brief because that was all taken care of by the district court. It was a very difficult project. So you approved of his discretion in that area? Well, he has discretion in awarding those fees. Yes, Your Honor. Yes. So one thing I did want to bring up was the vexatious bad faith litigation conduct because that's a separate ground. They actually, Judge Alsup, one thing that Judge Alsup actually did was he determined effectively that their witnesses, I think, were giving false testimony along the way. And they pushed that case on the original appeal, on the en banc, and on the remand. And so that in itself, given the recent monolithic case and Mathis case, that alone would have justified an exceptional case. But he didn't base his award of fees on that, right? That's right. But that was an independent basis that we moved for back on remand for awarding fees. And so we believe he erred with that as well. Now, one other issue is post-judgment interest. Now, Judge Alsup committed error in relying on TALTAC. And he effectively determined that if a case is vacated, that the post-judgment interest has to be determined from the later decision, not the earlier decision. And he committed error on that because the actual legal standard is that there has to be a legally sufficient judgment from which the interest has to be based. Judge Alsup's original decision back in 2008 was a legally sufficient judgment. The facts were consistent with the law at the time. It wasn't like many cases where cases are remanded back to consider factual questions where the judgment was not sufficient at the time. Now, if you look at some other cases, and I apologize for this, one case that we didn't cite to the court is the Guam Society case, the Ninth Circuit case. And what that case basically says is that when you have a situation of a remand and the judgment is vacated but not reversed, that in that type of situation, you would base the post-judgment interest from the earlier decision. What's the cite to that? It's 100 Fed Third 691, Guam Society versus ADA. And that's also consistent with the Planned Parenthood decision, which basically determines the same thing. So Judge Alsup misread the case law, he misread TALTAC, and he misread the case law generally on the Ninth Circuit law on the post-judgment interest. And that's significant because that's over a half a million dollars difference, and Abbott had the use of that money all that time. So that's all I have for now, unless there are other questions. One other point. The judge's March 2009 award made it clear that the $6 million was payable if the inequitable conduct was upheld on appeal. Of course, it was not. Doesn't that give you plenty of notice as to what's going on? Well, actually, if you look at the order, I think it's a little bit different because he said that the award should be made following the exhaustion of all appeals. We are now at the stage of all appeals being over in this case. But even if you accept that reading of the order, the case law would override that in terms of when the post-judgment interest would apply from. All right. Thank you, Becky. Ms. Shin. May it please the Court. My name is Clary Shin. I'm here on behalf of Saracen, Inc., now known as Abbott Diabetes Care, Inc., and Abbott Laboratories. The key principle in this case is discretion. So the district court said here, and this is on page 3 of the joint appendix, an award for attorney's fees of the cost of appeal is only warranted where the appeal is itself an exceptional case under Section 285. That is simply incorrect under the Supreme Court's decision in Jeanne. Is it not? Your Honor, under Rome v. Haas, where the case – No. Answer about Jeanne. Is that incorrect under Jeanne? I maintain no. And here is why. The Court applied Rome and Haas. No. The Jeanne case is the Supreme Court. But what I'm saying is that under either case, Your Honor, the way the Court read Rome and Haas is that the exceptional case – Jeanne came after Rome and Haas. It's six years later. Why is this correct under Jeanne? Because the exceptional case conduct has to be continuous throughout the proceedings. Where does Jeanne say that? Jeanne says there's a single determination as to whether a case should qualify for an award of attorney's fees. Is there any difference between EJ and 285 in that respect? Under that reading, Your Honor, the most that B. DeNova would be entitled to is the $350,000 it seeks for the remand proceedings. I don't understand what you're saying. Under EJ, if this were an EJ case, the District Court's reasoning here would be incorrect. And would it not? It may, but the result would still be correct, which is that this Court, in its en banc sericense decision, vacated the inequitable conduct ruling, which was the sole basis for the fieldwork. It has nothing to do with it. It's a single determination covering the entire case. The District Court, under Jeanne, has authority to reduce the fees, has discretion to reduce the fees, on a number of different grounds. And perhaps that would include that the appeal had merit. Perhaps. But this idea that these are two separate proceedings is simply wrong under Jeanne, right? I mean, there's no question about it. It may be wrong, but the Court does have discretion to deny fees, even in cases of exceptional conduct. Okay, but where did he exercise his discretion as opposed to saying, you have to make a separate determination for the appeal? He exercised discretion in three ways. He made some express findings here. One is that there was no bad faith litigation conduct. Well, that's fine. That's not the ground. The ground is inequitable conduct. For the initial fee order, Your Honor, the initial fee order, which is the 2009 fee order, was conditional. And to read, and this is on Joint Appendix 14578, the Court specifically said that, quote, following the exhaustion of all appeals of the underlying judgment, regarding the validity and unenforceability of the 551 patent, if the Court's inequitable conduct judgment is upheld on appeal, and it was not, this Court stated it. We're dealing with his fee determination here. After the remand proceeding, it's in the Joint Appendix, and I don't see where he says it's an exercise of discretion. I see him saying appeals are different. It's a separate proceeding. You seem to agree now that's wrong. But where does he say he's exercising his discretion not to award fees for the appeal? On page 4, Your Honor, he says in line 11, excuse me, lines 10 to 12, there was no litigation misconduct nor any other reason to find that Abbott's appeal was an exceptional case, warranting supplemental fees for the appeal and subsequent remand proceedings. He goes on to say supplemental fees are not warranted in this case. There's no frivolous litigation. There's no bad faith. And no litigation misconduct. So is that a finding specific to this phase of the litigation? Phase is, yes, Your Honor. But I'm not understanding whether you are arguing that there's no error at all, or that the error that he made was harmless. It does seem hard to reconcile Gene, the Supreme Court case, with his statement. Was that an error, or was it a harmless error? It was not an error, and to the extent it was an error, it was harmless. And why is it not an error? Because the court could have awarded, under its discretion, zero dollars for fees and costs. The 2009 fee order that was conditional on its inequitable conduct judgment being upheld on appeal was vacated. So at that time, post remand, the court could have awarded zero dollars. There is no per se rule of exceptionality in cases involving inequitable conduct. And certainly, even if a case is found exceptional, the court can deny fees. But he didn't deny fees. He awarded fees for the trial phase here. And certainly, as to the fees for fees, as to the fees that are being sought to secure that award, he has to award those fees under Gene, right? It's discretionary, Your Honor. Discretionary to award the fees for fees? I'm not aware of any case that says that. He may have discretion to award fees for part of the litigation, but not another part. I'm not aware of any case that says that the cost of securing the fee that he actually awarded doesn't have to be awarded as well. Your Honor, fees for fees would also be an abuse of discretion. There's no case requiring an award of fees for fees to the extent that… Even though they get the six million, there were some problematic activities. Troublesome and problematic. And we talked a minute about some of the attorneys claim more than 24 hours a day. The initial fee request was for $8.3 million. And after more than four rounds of fee petitions, including the assignment of a special master, the ultimate fee that was awarded in 2012 was nearly $6 million. Here, what the judge did, even though it was not required to assign any fees, is to award nearly $6 million in fees that Medianova has obtained. What it's now saying is reversible error. It's a court's decision, a very fair… And this is the judge who made the inequitable conduct determination. This is the judge who was closest to the underlying conduct and the litigation proceedings, who made express findings that neither the appeal nor the remand was exceptional. That's not reversible error, Your Honors. It is if Gene says you can't do that. And, Your Honor, we request the opportunity to brief Gene, which was not cited by Medianova… Yes, it was. …in the appellate brief. It's in the brief, but it's not relied on, really. It's not relied on, Your Honor. We believe that under that national presto brook tree versus AMD is not inconsistent with Gene. It gives the judge the opportunity to view the proceedings. There is nothing in there about apportionment of fees. What the court did is a very classic method of splitting the baby here. What it said is viewing the totality, viewing the case as a whole. What it chose to do is to reinstate fees for the initial phase of the proceedings, but to deny fees for the appeal and for the remand, where he made expressed findings that there was no litigation misconduct, no bad faith, and that neither of those proceedings was exceptional. Do you have anything more, Ms. Shin? Your Honor, I would also like to address the post-judgment interest issue. Tall tag here is applicable. What it stands for, and it followed Ninth Circuit law, is that the post-judgment interest rate should apply from the date of the legally sufficient judgment. In this case, that was the May 22, 2012 post-remand judgment. In tall tag is here, the lower court found an inequitable conduct determination and made an exceptional case determination. In tall tag is here, the court of appeals reversed and remanded. In tall tag is here, the district court reinstated the inequitable conduct determination, but awarded fees from the pre-appeal judgment, and this court reversed. This court reversed on the ground that the post-judgment interest should run from the date of the legally sufficient judgment, and Judge Alsup was correct in applying that date from May 22, 2012. One other thing, Your Honor. BD Nova cites PPG for the proposition that one should consider the totality of the proceedings. And I understand the position of Gene, but just to be clear, there what the court did is the lower court apportioned the fees and denied fees related to a PTO proceeding. And what the judge there said is that those proceedings were inextricably linked to the district court proceedings, and therefore rejected it on that basis. So PPG does not stand for the proposition that BD Nova cites. If Your Honor has no further questions, I'll submit. Okay. Thank you, Ms. Shin. Becky, you have a little over a minute and a half. Okay. Quickly, Your Honor. I think the thing that troubles me is when Judge Alsup said the appeal had merit, given his original decision and decision on remand, I don't understand that. And I think it really basically underscores the point about the abuse of discretion and that the decision to cut off the fees after the trial was really arbitrary because if you look at his original district court decision, he found that Dr. Sangheira was disingenuous. The excuses were not plausible and inconsistent. And Judge Dyke was on the original panel on a case, and I guess everybody was involved in Jan Bank, but the facts there are pretty egregious. And so for Judge Alsup to say that the appeal had merit, I found to be inconsistent with his actual actions in determining the inequitable conduct and also determining that this case was exceptional. Now, Judge Rader, I want to get back to your question about the 24 hours because you brought it up again, and I want to make sure that it's very clear on that. We were sued under four patents. Our billing records were not divided out by patent, and so we had to go back and we had our accounting department trying. We had taken them out. We had to manually go through docket entries. Four years of entries, mistakes were made, and that's all it was. It was innocent mistakes, and we demonstrated that. So there was no bad faith there on our part. We weren't trying to get any more money than we were entitled to. In fact, we got a lot less money, I think, than we were entitled to because we didn't put in fees for a number of things on that case. And we even now have over a third of the award having been eroded by subsequent proceedings. The point, though, is that the record does give some latitude to the district judge to make a decision in this area, doesn't it? He may have been saying it was problematic and troublesome, which is what he did say. You mean our billing records? Our billing records? Is that what you mean? I think that's exactly what he said, didn't he? Yeah, well, it was troublesome, I suppose, because there were errors. Nobody likes errors. It's a ground for reducing the fee-for-fee award, but it's not a ground for eliminating the fee-for-fee award entirely. Exactly. And then finally, I just wanted to bring up on this Guam Society case where the Ninth Circuit said, like other circuits, we have rejected the idea that post-judgment interest should apply only from the date of the second judgment whenever the first judgment is reversed and remanded. So there's no per se rule that when it's reversed and remanded that you have to go by the second judgment from the date of the second judgment rather than the date of the first judgment. And then I won't take up the Court's time with this, but there's a number of factors in this case that the Ninth Circuit says a Court needs to analyze, and Judge Alsop did not analyze those factors properly. Thank you, Mr. Oleksii.